Thank you, Your Honor. If it please the Court, Michael Kluth appearing on behalf of Mr. Johnson, the petitioner in this case. This is a very troubling case. I would like to begin briefly by pointing out the procedural posture, the way this case got to the Court. There was no — there was an appeal filed after extensive lower court proceedings that clearly established bad faith misconduct on the part of the prosecution. The appeal was filed. The petitioner never filed, never had counsel in State habeas proceedings. His Federal appeal was then filed based entirely on the appeal that had been filed, and he was requested but was not granted counsel in the district court habeas proceedings. This is an enormous record, as the Court is aware. This is an incredibly complicated case. This is a situation in which the ability of this Court and, quite frankly, counsel to argue on behalf of a petitioner where there has been no development of the record in habeas proceedings previously makes it extremely complicated. I would also note that this case developed just at the time that the Martinez-Trovino cases were developing, and in retrospect, had Trovino occurred earlier, I probably would have attempted to get it back into the district court. I say that as a preface. I understand that's not an argument per se, but I think it is something that needs to be taken into consideration. With regard to the substantive issues, I think that the young blood, Trombetti young blood issue, is absolutely crucial to understanding how egregious the misconduct that occurred in this case. I think this really comes down to a very narrow question, which was, was the evidence that was finally produced of the actual press releases comparable to what actually existed and what was destroyed? And here, I understand young blood sets a very high bar, but this is the rare case in which I think young the bars in young blood have been met. First, young blood says that in a case in which you have bad faith, clear evidence of bad faith. And this record has so much evidence of bad faith on the part of the investigator, Anderson, that I don't think it's simply not in dispute. So the question is, is there something more than that? Well, that's, I think, the crux of the difference between my position and the government's. The government's position, to its credit, doesn't really argue that there wasn't bad faith. It simply says the evidence was comparable. And the difference between their position and my position is that the evidence of bad faith goes just to the destruction or attempted destruction of the press release, or is there something more? It goes to the destruction of the source of the information that led to the press release. Meaning what? The cards were people, you know, who called in to the press. No, I don't think it was cards. The problem is we don't know. We don't know what caused this whole flurry. It wasn't just one isolated press release. It was a number of different press releases. The government speculates that we know the source, that it was Van Jackson. But the interesting thing about this is on its face, the press release could have been easily explained away. In fact, the thing that surprises me is why when the issue first emerged, the detectives didn't simply say, well, you know, we had this information, we didn't think it was particularly reliable, we released the press release, and that was the end of it. And we all know that if that had been what the investigator had said, that would have been the end of it. There would have been no issues. There would not have been a new trial. But instead, we have this elaborate effort, which was documented and proven, to try to cover up first the press releases, and then the chief investigator, Anderson, says, well, I didn't really know what the source was. It may have been this, it may have been that. And so I think that the circumstantial evidence surrounding the cover-up of the press release goes to the heart of the question of what was the real source. Now, there's another interesting issue here, which I think is a twist. Obviously, at trial, the defendant took the stand, and he said the only two people at the scene was Harrison and himself. Government, not surprisingly, says, well, then where's the prejudice, because there was no third-party suspect. Well, and if there was, he or your client would know who it was. Exactly. That's why I am stuck, so help me get past that point. I understand that, and that's why I've gone directly to it. However, one, and this does relate to the development of the record, there was other people that could have been there. Secondarily, the real issue is here, if there was another person there who was a witness to what went on, and who was, in fact, one way or another, involved with Harrison, in other words, there was something going on behind the scenes, and the evidence in the record establishes a ground that that other person, there was indications of who that other person could have been, that it was a particular person who was going off to Hawaii and various things. That was never established. So what I'm suggesting is, and this gets back to the question in Youngblood, Youngblood is possibly useful. If this were a straight Trombetta case, if this were a straight Brady case, I acknowledge I would not be able to establish prejudice. But on the standard of possibly useful, I think there is enough evidence in this record, as it stands, to establish that there was some information out there that was possibly useful. The reason that Anderson was so intent on making sure that nobody found out what the real source of that information was is because of his fear that it was, in fact, possibly useful. And paradoxically, I'm not sure I understand your theory. Your theory is that this third individual was a suspect in the crime or was just a mere witness to the events that happened. I'm sorry. I'm sorry. I will also fight as the previous fighting. No. My theory is he could have been a multiplicity of things that would have been potentially useful. Could have been a witness, plain-out witness. Anderson. Kennedy, who would have corroborated your client's version of that? Who would have corroborated my client's testimony. Obviously, if he was a witness who corroborated the prosecution's theory, Anderson would have no reason to cover him up. So the fact that Anderson wants to hide him suggests that whoever that suspect or that person was. I mean, the thing is, though, it would be different, I suppose, if they had tried to cover up the existence of a third-party witness. But the thing said a suspect, someone else involved with the crime. And that just doesn't seem to support your version at all. But all we have is a press release that says there was a possible third suspect. We don't actually have any evidence that identifies them as a suspect. In other words, it's not somebody that somebody else saw a shooter. That was what they put into the bulletin. My suggestion is that what that bulletin suggests is not that there was a suspect. It suggests that there was someone else there who fit a particular description, which coincidentally happened to fit the description of some other people who might have been involved in the case and the circumstances. So I understand exactly the difficulty in making that leap. And were it not for the egregious nature of the bad faith misconduct on the part of Detective Anderson, I think this case would not be before you. And that's also why I think it is important, you'll note in my filings, one of the things I ask for, because I understand that the actual sanction in a Youngblood case is quite extreme, I think, given the procedural developments of the case, the fact that there was no development on Habeas, that this is a very appropriate case to be sent back, remanded back to the district court for further briefing and potentially an evidentiary hearing on this issue, because the issue was never briefed in the district court. It was simply presented on the basis of the record that was in the appeal. And so I think that this Court has that ability. Kennedy, if we go back to the interval between the first and the second trial, wasn't there a full evidentiary hearing in that context where your client had counsel? And there were extensive evidentiary hearings on Habeas, not only on this issue, but also on recusing the prosecutor and all sorts of misconduct. So given that, why is it that I don't know, what do you think is going to happen if there were an evidentiary hearing in Federal court that hasn't already been, that hasn't already happened? I think that there is a possibility of developing more evidence. I can't say that. There's a possibility of developing more argument, giving the district court a chance to look at the facts, because this is actually a factual determination. I mean, this is the kind of case that the district court certified that issue for Habeas. This was an issue that raised serious questions. And so I think particularly, and once again, I say, in light of the evolution of recent Supreme Court precedent having to do with Martinez and Trevino and the importance of ineffective assistance of counsel on Habeas having to do with procedural issues, I think that that provides a context in which this Court could remand the case on this particular issue. Now, I want to be clear. I also think that the inconsistent prosecutorial theories were particularly egregious. I understand the case law and the very convoluted nature, but this is a case in which the prosecutor got up, said there is no evidence that Johnson was the shooter in one trial, and then turns around in the next evidence, in the next trial, and says he was the shooter, and rationalized it on the basis of a witness the defense presented, which the record establishes was substantial. And so what's the U.S. Supreme Court case that you think gets, you know, that you think gets you closest to saying that's not okay? Well, I think the egregiousness of the inconsistency puts us back in the context of Berger, Moody, and Holley. I think I understand the arguments. I also think, as I argued in the brief, that Stumpf, which if the footnote in Stumpf were more than a footnote, then I wouldn't be making this argument, obviously. But it was a footnote. The fact that it was a footnote, the fact that only two, three of the justices signed on to that footnote, I think implies that the Supreme Court is not clear, that it has not established that precedent. I understand that the circuit court interpretation of that is very conflicted and extensive. So, I mean, and I'm aware the Court is going to deal with that issue. But I think that, once again, and to go back to at the State court, the issue was Zacharias. Zacharias is obviously decided on Federal grounds, but is ultimately a State precedent, not a Federal precedent. I understand that. The government argues that there was no manipulation of evidence. I suggest that's not entirely correct, particularly with regard to gunshot residue evidence, which ended up being used crucially against Johnson, which would have told the government was aware of and totally contradicted the position that it took in Harrison. At this point, I'd like to reserve my remaining minute and 45 seconds for rebuttal. Thank you, Counsel. May it please the Court. Jeff Lawrence for Respondent of Halee. I think I'd like to begin just by pointing out that, as Justice Wattford noted, there was an extensive evidentiary hearing process in State court. There didn't need to be further factual development because everything was developed factually between the two trials. This was a situation in which the trial court in State court got it right by setting aside the original trial, holding extensive evidentiary hearings, making sure everything came out before having a new trial on the case. The State court made factual findings with regard to the nature of the evidence that was missing originally, that had been provided, that there was no evidence out, no further evidence out there that could be exculpatory, that could point to anybody else. It traced the source of the discrepancy of the Caucasian third suspect to Van Johnson who – I'm sorry, Van Jackson, who was a police officer who – off-duty San Francisco police officer who observed the cars leaving the scene. Nothing he could provide would provide any additional witness information as to what happened at the shooting, because that was something that happened after the cars left, and both defendants testified that they were alone in the cars. So it was an incorrect observation by him. It was proven to be incorrect based on their own testimony. There's nothing here that would establish any further – anything exculpatory. And everything – the State court made a factual finding that everything was provided. That factual finding has not been rebutted by clear and convincing evidence. Unless the Court has any further question or any questions, I'm prepared to submit. Thank you. Verrilli,, your Honor. The trial court actually addressed the issue of Van Jackson and whether he was the source. It's supplemental excerpts to the record, page 176. The court noted, I want to – and this is the trial court early on that's being – it's hearing these evidences – I want to emphasize it's pure speculation that if the dispatches, the notes, et cetera, had been preserved, they definitely would have established it was Van Jackson who made this observation and or that. And it's pure speculation he would have provided any greater detail concerning the matter than can be proven circumstantially regarding Eric Smith's involvement. In other words, what may be missing, and what may be missing as a result of the destruction of the dispatches and so on, the contents of those is pure speculation. It's potentially exculpatory, but not, cannot be said to be definitely be exculpatory. In other words, the Court says, and I agree, it's speculation as to who this real source was and what the source is. But that gets us back into what I think is the crucial element in Youngblood. Youngblood clearly says that a court is permitted to draw an inference from the back from the bad faith conduct on the part of an investigator. And in this case, I submit that if Van Jackson had been the source and there was nothing else that Van Jackson had to say, and that the bulletins that went out were just simply, as happens in a lot of cases, mistaken bulletins, we would not have had an elaborate scheme to cover up the existence of those bulletins, which included, and it's important to note the timing, the bulletins were essentially covered up on the computer, as was established, hours after the Court issued a discovery order. I think that in and of itself merits the kind of an inference that would not be permissible in any other circumstances. With that, I submit and thank you, Your Honor. Thank you, counsel.
judges: Reinhardt, Noonan, Watford